May it please the Court, my name is Tim Kalanoski. I represent the father in this case, Gabriel Smick. With everything going on in this case, we have 12 points of error and there is one simple truth. We wouldn't be here today if the stepfather wasn't trying to adopt my client's children. The government, because of parental right, there is a fundamental right, or a government action in this case is the Court's decision. There is no compelling reason for the government... Before you get to that, why was this case tried on California law? Because Judge Sweet made the decision to do so. There was a hearing between the California Court and the Texas Court. The Illinois Court chose to keep jurisdiction and then there was a discussion about what application of law should be applied. There was some debate about what the Court of California's opinion was on that, but Judge Sweet determined that California law could apply. There is no transcript of that conference call that was made. I mean what Judge Sweet... They entered orders on the same day. What Judge Sweet said, he says, this Court understands that the petition to free the minor children from the custody and control of Gabriel will be decided in accordance with the laws of California. He doesn't say really, I find that it should be the law of California. And what Judge Oberholzer in California says is, Judge Sweet has determined he will hear the matter and has further determined he will apply California law in reaching his decision. I mean Judge Oberholzer doesn't say that's right or wrong or whatever in his order. That's my understanding. Okay. Both orders say that under the Unifor Child Custody Jurisdiction Enforcement Act, Illinois is the home state, so why didn't Illinois law? My position is that it does. And did you object throughout? Yes, those objections were cited in my brief and in my reply. Mr. Cranley was the trial attorney for Mr. Smiggy. You were not the trial attorney, okay. And he objected throughout. Okay, so let me ask you this. Let's say we decide that the trial court erred by applying California law. What's the appropriate remedy for us to do? Well, one option would just be to reverse remand. We start over. My client has missed a year of his children's life and is $20,000 in debt and we start over. My position is... Let me ask you this first of all. At this point, there have been no Illinois pleadings filed alleging that your That's correct. This was tried on California pleadings. That's correct. Okay. So the court could just say reversed. That's correct. But that wouldn't prevent the filing of pleadings. That's correct. Or we could say reversed and remanded to allow the filing of pleadings if so desired. I think there's enough evidence when you look at the fact that even if he was found to be mentally incapacitated, incompetent, whatever term you wish to use, that the court in Ray RC says that if we can find some other assistance to make sure that the children receive full parental responsibility or proper care and control, whichever language you wish to use, then there is no termination. In this case, we have evidence of four years of supervised visitation that works where there is no evidence that they were ever lacking in that. Just still going along with my question here about this issue of California law, if the court throughout this entire proceeding applied the wrong state's law, do we have any choice other than to reverse everything that happened? And I'm going to ask your opposing counsel the same question. I think you do because there is evidence that there is a solution that works. In other words, there is already evidence that the parties have put on that there is a solution that shows that there can never be a termination, and that is supervised visitation. So you want us to go to the merits, even if we decide that the trial court applied the wrong state's law throughout the entire proceeding, and reverse it and say they don't get another chance or whatever under Illinois law? There is another answer, discussed with the co-counsel. There is a law, there are courts in Illinois that say if the foreign jurisdictions in Illinois law are substantially close enough, then it doesn't matter that I didn't decide it because I didn't support my position that California law shouldn't have been used. But I'll do candor to the court. There is case law that says if the two states' laws related to an issue are the same, then there is a derrick. Are you telling me that their laws are essentially the same? No, you asked if there was any way. I don't think that they're the same, but you asked if there was any way in all due candor. Well, I understand that. Go ahead with your question. Let me ask you just to follow up one question in that line. If we were to take that approach of saying it should have been Illinois law, and I'm doing this hypothetically, and we look at the record and say now under Illinois law this is close enough and everything, are we retrying the case? I don't think so, but the reason I would suggest they're not the same, or at least that my client would be prejudiced by that, is that the standard of proof in the California law requires that these daughters have certain qualifications. If Mr. Cranley knew going in that the information that they were going to use didn't meet that, if he knew that he was trying to meet the Illinois burden or standard, this case might have been approached in a completely different manner. So from that perspective, I think if you were to say they were close enough, I think that actually does prejudice my client. Now, I think they otherwise the evidence is completely lacking. Well, your argument is the trial court erred in applying California law. That's correct. Orally, it might have been. In choosing and applying. In choosing and applying. And it's difficult when I'm using California law and it says aren't you being disingenuous in using that. Right now California law is the law of the I don't want it to be California law, but under California law, I think it's clear that this gets reversed and remanded because the evidence they put on doesn't meet California standard. And I've got all kinds of constitutional arguments and everything else for my client's benefit that should accomplish the goal that we're seeking. Any other questions on the California issue? No. There are a couple of things I'd like to point out about that. Section 7800 says this entire section is a political instabilities and security or otherwise missing. It's not missing in this case. My client has visitation. During the visitation, there's no evidence that anything went wrong. Under California law, under 7821, clear and convincing evidence controls throughout. The only two sections the court used to terminate were 7826 and 7828. Why those, why the evidence is inadequate to meet that and, you know, the evidence that is presented is from 2009-2010, refers to a physical disability. You know, I'd ask the court what is the mental disability here? There is no mental disability. He was never evaluated for his relationship with his children because that's not what these evaluations were for, but when you read these sections, the evaluation needs to be related to that. Related to strict scrutiny, the compelling interest, the pressing public necessity is another way to phrase compelling interest. If Mr. and Ms. Crouch had gone to 18 different states, maybe three other states in addition to what their laws are, this case could have been brought. How is it pressing public necessity when 40% of the states wouldn't have even as the primary issue with no abandonment, with no harm to the children, anything like that? Again, it's got to be narrowly tailored, least restrictive means necessary, no more burdensome on the right than necessary. In NARC, and I did not cite this, on page 1243, it says notwithstanding the persistence of the parent's mental condition, the parent might be able to discharge his parental responsibilities with proper training or other services. In this case, we already have evidence that other services work. We've got four years of visitation with supervised visitation by paternal grandfather and step-grandmother, and there's no evidence that there was a lack of parent control or anything else that the children were ever in danger. And in footnote 1 to NARC, they discuss exactly what the diagnosis and the limitations and what can be done, and none of that was done here. And you know, you read the court's language on the argument to reconsider, and he says that it's a physical problem. It's a lack of ability to communicate. I don't think this is a mental illness issue. Then there's not clear and convincing evidence, okay? So in that, and so far we've just talked about fitness. We haven't even talked about the termination state, excuse me, where this wasn't bifurcated or anything else. Even if we go through all of that, there's a less restrictive means, even if supervised visitation isn't adequate by itself, and that is to have three parents, and the California law allows for three parents. So there could be an adoption by Mr. Crouch. We have three parents. Visitation continues as it does. In my reply, I cited the statute and explained where that statute came from. We've also argued that this could be reversed and remanded because they simply cannot bring this case, and that was our Arstotle and Reiss judicata issue. Mr. Smith's condition occurred before the divorce. There was a degree, an agreed-to divorce decree. There was an agreed-to modification where these circumstances, these exact circumstances existed, and they, by their agreement, they're showing that the circumstances of supervised visitation works, that overcome any problems that my client has. I get into the ambiguity argument. The one case that I would point out that NRARC didn't take into consideration is Collin, the United States Supreme Court case, that shows that this is ambiguous because this statute, the California statute, doesn't tell a parent what care and control is adequate to avoid termination. And again, the reason this is so important is because usually when we are reviewing the government's action to see if it's compelling, it's done by a police officer or a social worker. It's done by someone on the executive side. And so we have clear and convincing evidence at the trial level and it comes up on review and we have manifest evidence for review. In this situation, the first government action is biled by the trial court. We have a step-parent bringing the first government action, one in fitness, one in determination, one in wanting to adopt. The first action to terminate is by the government, is by the court. And it's supposed to be by clear and convincing evidence, and right now the case law says that that has to be reviewed by this court on a manifest evidence standard. That's problematic because then there really is no clear and convincing review of the first government action. So I've got that there. Colander's footnote 7, it would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders and leave it to the courts to step inside and say who could be rightfully detained. And in this case, who is rightfully mentally incapacitated or who's not exercising adequate care and control. I'd ask the court, what was the trial court standard for adequate care and control? What was the trial court standard to determine that someone is mentally incapacitated? My client is in a wheelchair who has difficulty communicating. They don't know what's going on up here. One of the medical reports said we didn't do a neurological exam. The other one says anything we say has to be taken with a huge grain of salt because of this inability to, it's a motor control function. My client is essentially in the same position as someone with ALS. He's essentially in the same position as, such as Christopher Reeves, when he had his accident and paralyzed and he's in a wheelchair, he can thumb up, he can do a couple of things. When he gets in a stressful situation, he has a difficult time controlling those motor issues. The judge interpreted some of his actions during the trial without telling counsel. We think that's problematic. And in this particular situation, you know, things work. The children have a relationship with this man. They talk about that, well, we'd like to be there a week. We miss. The young girl says she cried because she misses her dad, talking about Gabriel. In this situation, there's a relationship there with this and the court has discounted it. I guess he's a vegetable. He doesn't need to have a relationship with his kids. But all indications say he does respond. All the medical evidence says he does respond when he asks questions. If you're in a wheelchair and you can't do much, one of the things you have to look forward to in life is watching your children grow up. And that's what's being taken away here. This guy has very little left in his life. Watching his children grow up is one thing. Thank you, counsel. Counsel? Justice Woldenberg, Senator Kalanowski. If it pleases the court, I guess I should start with Justice Stewart. Pardon the voice. I'm a little froggy today. The fundamental problem you have, Judge, is there's a case out of this district from 2003, Mattamuma, that was tried in Madison County that had a Madison County judge applying Indiana law to modification of child support in Madison County. That came up on appeal. Justice Melissa Chatman ruled that it was not error for the judge to apply that law and went on to say, moreover, by failing to appeal the Indiana court's decision not to assume jurisdiction, Dwight implicitly acknowledged the validity of that ruling. If Dwight believed that the Indiana court erred, his remedy was to appeal the decision to the appellate court in Indiana. This was not a chambers conference. We briefed and re-briefed and re-briefed. He had retained counsel in California that submitted briefs. There was a counsel in California that was appointed to represent the children that submitted briefs. We submitted briefs. There was obviously, from what you read in the orders, conference calls between the judges. And there was a decision made. And the decision made was to apply California law. Have you ever seen that? You've been involved in these multi-state cases before. Have you seen that? Yes. Well, the difficulty I have with that, our position was, it should be California, because our clients lawfully removed the children from California, all the contacts were in California. California had become the home state. That was one of the things we argued. And I don't get the right of the order for the judge. But the judge did find that California law was going to be applied, but that Illinois was still the home state because Gabriel still lived here. I mean, isn't that the whole point of the, having this act passed and all the states concerned, which state's going to decide it? I agree. And then, uh, but then you're going to base it on some other state's law. But didn't he have an obligation to come up here and ask you to, wait a minute, this is a right. I mean, you're in your brief, you talk, he could have filed under 307. He could have filed under 308. Those are permissive interruptions. I understand that, but that would have shown, I don't think he objected to it at that point. I think this was something that was discovered on appeal. When we went through, if you look at the trial transcript, we're arguing California back and forth and back and forth. That's what the whole trial was. Well, you have to because that's what the judge said is going to be decided on. I understand that. If the judge does something that you think is not correct, you have an obligation to seek an appeal. Whether you get it or not, you have the obligation to seek it. You have an obligation to seek a permissive interlocutory appeal, otherwise you've waived the issue? I think you have. Now, in Matt Mueller, the decision was made by the Indiana court to apply Indiana law. Isn't that correct? No, it was like this one, both courts. Judge Duff in Madison County said, we're going to apply Indiana law, and the judge in Indiana said, fine, go right ahead. Well, in your brief on page 12, inciting Matt Mueller, it says, moreover, by failing to appeal the Indiana court's decision not to assume jurisdiction, that Dwight implicitly acknowledged the validity of that ruling. Correct. And if Dwight, then on continuing, if Dwight believed the Indiana court erred, his remedy was to appeal his decision to the in Illinois who made the determination, we're going to apply California law. I think the problem we have is we don't have a transcript of the telephone conference. Clearly, on the same day, on the same day, both judges, Oberholzer in California and Sweet in Madison County entered the order to say, we're going to try the case in Illinois, we're going to apply California law. Well, that's not, I mean, Oberholzer's order just says, Judge Sweet has determined he's going to apply California law. Oberholzer never says in his order, I agree with that, that's what I recommend, that's what I find to be true. And in this case, Gabriel won in California. He won in terms of Illinois having jurisdiction. Why would he appeal the California decision? I mean, you're arguing that he needed to appeal the California decision in order to not waive the issue. Why would he appeal it? I mean, well, he didn't want California law applied here, just like in that area. And so then his only choices are permissive interlocutory appeals, which probably didn't even apply anyway. And certainly there's a lot of law that you don't waive an issue by failing to file a permissive interlocutory appeal. But he didn't even object to the trial, Judge. I mean, there were no objections to the trial. This was something that was thought about This was not something, there wasn't any kind of motion filed prior to trial, there wasn't any kind of formal written position taken that you cannot do this. After the briefs and the ruling, it just sat there. There wasn't a request to reconsider, there was nothing. And so how do you then move forward and have a whole two-day trial with all the issues and five other factors of the California statute, and then on appeal decide, whoops, you know, I mean, isn't what usually happens in this kind of case, you know, the two, the courts from the two different states get together, they have a conference call. You know, if it, wherever it's decided has jurisdiction, then pleadings are filed in that jurisdiction and that jurisdiction's law applies. I mean, I mean, there's a reason why there's no cases on this hardly anywhere. It's because everybody else seems to believe that you apply the law of the home state, which seems to be the whole purpose of the act. We've cited three or four of them, Judge, so it's not a complete outlier, but I agree with you, that's normally the way it's handled. But what do I do with the judge? Do I appeal Judge Sweet's order saying we're going to apply California law? I mean, you know, it just doesn't make sense to me that you go through an entire trial accepting that, you make no objection, and then on appeal suddenly all of these constitutional issues and, you know, interpretation issues and the rest of that come up. Well, if we decide that the entire case was tried under the wrong state's law, what are we supposed to do? I mean, are we supposed to then go ahead and decide on appeal on the wrong state's law? No, I guess what we file in Madison County under the Illinois law and figure out a way to get around it. But I mean, that doesn't seem to be a very logical way to proceed. If you look, let me just do this other thing, Judge. We're asking about the difference between the two statutes. If you look at the case that Mr. Kalinowski was citing in Ray RC, it's very, very similar to this one. That went all the way up to the Supreme Court. They talked about what the standards were and so forth. The California statute is virtually identical to the statute they applied in RC. It's virtually identical to ours. This was not a close case. This man had multiple heroin overdoses and multiple strokes. He's completely, totally disabled. He has no control of his bodily functions, can't move any arms, can't speak, apparently can't see, can move his thumb up and down, and that's it. And we have the medical evidence that this is a permanent condition. And in terms of a mental illness, it's a cerebrovascular incident, a stroke. That's a mental disability. So if you look at those two cases, I think we're putting form over function. I had issues with the hearing. Obviously, if they were dissatisfied with applying the California law, I think they had remedies that they needed to pursue. So your argument then is under California law or Illinois law, it doesn't matter if a man has a series of strokes and becomes incapacitated, his parental rights can be terminated to his children. That's what RC says. What kind of record was made by Judge Sweet when he determined or revealed to you or however it was announced that California law would be applied? We had two or three chambers' conferences. The one that I know immediately preceded the entry of this order was taken down by a court recorder. And then we received a written order from California and a written order from Judge Sweet. We don't have a transcript of their telephone conference. Oh, no, I realize that. And I guess I shouldn't bother arguing on the standard review under the California statute if you're deciding whether we're going to use it or not. I mean, the California statute's real strong on the standard of review. It's the old give the benefit of the doubt to the trial judge's decision and ignore all contrary interpretations and assumptions. It's not too far from what we call manifest way to the evidence. I mean, it's really pretty much the same thing, isn't it? It is, and we cite that as well. But I mean, this is a case where this judge sat there for two days, and he makes lots of findings about the credibility of the witnesses. We questioned Gabriel, tried to ask him questions. He observed Gabriel's condition. The whole question is, is he physically incapable of exercising parole control over the children? And whether you do that here under the Illinois statute or the California statute, I think factually it's essentially the same thing. Are you interpreting control as essentially involvement? That's what the statute says. Being able to participate in, if you read through the statute, it's kind of an interesting statute. It's releasing the children from custody. Yes, and it's very interesting. It's very interesting. But it is being able to participate in terms of being, you know, I mean, the questions we ask, if the kid grabs a hot pot off the stove, can he do anything about it? No. If he's got a knife, can he do anything about it? No. It's those kinds of things. This is not just somebody that's on medication and has some psychological issues that maybe he'll work his way out of. This man is completely, totally disabled permanently, and he cannot have any meaningful involvement in raising his children. I mean, this whole thing was brought by his father and stepmother. That's the moving party on that side. Poor old Gabriel can't do anything. Any other questions, gentlemen? I don't believe so. Thank you very much. I think there's a confusion in terms of jurisdiction and choice of law. I point this out in my reply. It's about the interlocutory appeal, the absurdity of how many times this was challenged that we shouldn't use California law. How many times do I have to bash my head against the bench before I understand that you say no? Mr. Cranley had been told repeatedly California law applies. He had raised it in his briefs. He raised it. He objected. He objected to trial. Those citations are in my reply. In red, RC is a facial challenge. When you look at that case, look at everything that the court is saying to do when this goes back down. If you look at all the protections that the Supreme Court is demanding, they all work in the favor of my client, and I cite those, and that's why I'm citing that provision today. If we can find some other solution. Everything, he even just said that the issue is physical. There is no case if the issue is physical. The only case is if there is a mental issue. Gabriel Smith cannot stop the children from going down the stairs unless he runs the wheelchair in front of them to stop them. He can't stop them from burning their hands. That's what supervised visitation is for. Doesn't mean he can't have an emotional relationship with the children and vice versa. It doesn't mean that they can't communicate. He can communicate up, down. He can let them know what he wishes. They simply have to ask questions. Is it an unusual situation? Yes, but it is one where the people can have a relationship. And lastly, we don't need to object here. His reference to drugs, drug use, is prejudicial. It's irrelevant, and it's false. Cause of action here, the cause of the stroke here, if you look on page A137 of their own evidence, says there were no drugs in his system when he had the stroke. I can't ask you to strike that word from your brain. I can't ask you to strike their pleadings. I can't ask for sanctions against Mr. Steiger for bringing this up. He didn't include it in any of his briefs. I was prepared to handle that by motion. He brings it up here for the first time in front of this court other than one other motion, and it is absolutely wrong and prejudicial and has nothing to do with the issues before this court. Plain and simple, it's unjust in this situation to use California law. My client's never been in California law. If California law is going to be used and the substance of California law is going to be used, they fail to meet it. They shouldn't really get a second bite at the apple when they fail to meet the law that they wanted to use. The law here is problematic, but the evidence pretty much shows this, and we shouldn't have to have another trial to show it, that there is a solution for whatever Mr. Smith's problems are, even if they are mental, there They never say in their evidence that the four years that we've had, that there was a failure of adequate care and control. With that, I rest your honor.